UNITED STATES DISTRICT COURT
SOUTHEN DISTRICT OF NEW YORK
-----------------------------------------------------------

DIEDERICH FOR LEGISLATURE O/B/O
MICHAEL DIEDERICH, JR.,

                   Plaintiff,

against

WIN YOUR RACE, LLC, AND
ERNEST M. WRIGHT A/K/A "MACK" WRIGHT,

                   Defendants.

-----------------------------------------------------------

**COMPLAINT**

# 08 CIV. 8214

## JUDGE SEIBEL

Plaintiff Michael Diederich, Jr., complains of the Defendants as follows:

### PARTIES

1.  Plaintiff Michael Diederich, Jr. is an attorney with law offices in, and is a resident of, the Town of Stony Point, County of Rockland, State of New York.

2.  Defendant Win Your Race, LLC (hereinafter "Win Your Race") is, upon information and belief, a business corporation organized and existing in and/or authorized (or previously authorized) to do business in the State of Florida, with headquarter located at 557 Woodview Drive, Longwood, FL 32779.

3.  Upon information and belief, Win Your Race, LLC was incorporated on Saturday, January 01, 2005 in the State of Florida and is currently not active.

4.  Defendant Ernest M. Wright, upon information and belief, is a resident of the State of Florida, residing at 557 Woodview Drive, Longwood, FL 32779.

5.  Upon information and belief, Defendant Ernest M. Wright is also known as "Mack Wright."

6.  Upon information and belief, Defendant Wright is the principal of, and registered agent for, Defendant Win Your Race LLC.

7.    Upon information and belief, Defendants are not authorized to do business in the State of New York.

## FEDERAL JURISDICTION & VENUE

8.    Plaintiff is resident of and domiciled in the State of New York.

9.    Defendants are resident of, or organized to do business in, the State of Florida.

10.    There is complete diversity between the Plaintiff and the Defendants, the amount in controversy exceeds $100,000, and substantially all acts and omissions giving rise to the claims herein occurred in New York State.

11.    This court has diversity jurisdiction herein under 28 U.S.C. § 1332(a)(1), and under 28 U.S.C. § 1391(a)(2)venue is properly in this district.

## FACTS

12.    Plaintiff Michael Diederich, Jr. is a licensed attorney, an advocate for various public interest and environmental causes in Rockland County, a Lieutenant Colonel in the U.S. Army Reserves and Iraq veteran, and a person who has sought to improve local government by participating in political activity and running for public office.

13.    In 2007, Plaintiff Michael Diederich, Jr. became a candidate for the elective office of Rockland County legislator.

14.    This candidacy included registering with the local board of elections.

15.    Upon information and belief, directly or indirectly, Defendants learned of Plaintiff's candidacy for local office from Plaintiff's registration as a candidate for public office.

16.    After Plaintiff registered his candidacy for public office, Defendants sought the business of Plaintiff as a vender of political advertising services.

2

17. Defendant sought Plaintiff's business by mailing a postcard addressed to:

> "Mike Diederich
> 361 Route 210
> Stony Point, NY 10980-3230"

18. A true and accurate black and white photocopy of Defendants' color advertisement and solicitation, a two sided postcard, is annexed as Exhibit "1".

19. Based upon Defendants' mailed advertisement, and Plaintiff's subsequent telephone conversations with Defendant Mack Wright, Plaintiff was convinced by Defendants that Defendants could provide Plaintiff with a valuable service in making local Rockland County voters aware of Plaintiff's qualifications as a political candidate for the office of County Legislator.

20. Specifically, Defendant convinced Plaintiff of the value of Defendants' "RoboCall" political advertising by making such representations that, among other things:

- "Guaranteed Results Voice Broadcast"

- "If we do not achieve, your calls are free"

- "Ten years experience electing unelectable candidates"

21. Upon information and belief, Defendant Wright made his phone calls to Plaintiff from various locations, including Florida, Alabama or George, and Washington, D.C., all of which were with Plaintiff at Plaintiff's offices in Stony Point, New York.

22. Thereafter, in October 2007, Plaintiff and Defendants agreed that Defendant would make telephonic ("RoboCall") broadcasts to voters in the county legislative district where Plaintiff was campaigning (Rockland County Legislative District 1).

23.    Accordingly, Plaintiff paid for a telephone list of voters residing in District 1, which list Plaintiff obtained from a New York City company recommended by Defendants, which company provided this list directly to Defendants.

24.    Defendants entered into an agreement with Plaintiff that Defendants would broadcast RoboCalls on November 1, 3, 4 and 5, 2007.

25.    The purpose of the RoboCalls was to inform voters about Plaintiff's political candidacy on the days immediately prior to Election Day, namely, November 6, 2007.

26.    Plaintiff and Defendant Wright discussed and agreed to the following schedule of RoboCalls:

- an "introduce myself to the voters" message from Plaintiff on Thursday, November 1st;

- a "vote for my husband" message from Plaintiff's wife on Saturday, November 3rd;

- a substantive "campaign issues" message from Plaintiff on Sunday, November 4th; and

- another substantive "campaign issues" message from Plaintiff on Monday, November 5th.

27.    Defendant Mack Wright advised Plaintiff that the most important of the RoboCalls were the calls to be made on the two days immediately preceding Election Day, namely, November 3 and 4, 2007.

28.    Accordingly, Plaintiff reserved his strongest messages, designed to most powerfully persuade the voters, for November 3rd and 4th.

29.    Plaintiff informed Defendant Wright of this strategy, with which Defendant Wright was in agreement.

4

30.  For reasons unknown to Plaintiff and never adequately explained by Defendants, no RoboCalls prepared and submitted by Plaintiff to Defendants were broadcast by Defendants on November 3 or 4, 2007.

31.  This failure on the part of Defendants was in breach of Defendants' contractual agreement with Plaintiff.

32.  Plaintiff became aware that the RoboCalls were not broadcast on Sunday after Plaintiff returned from a day of campaigning.  Plaintiff listened to his phone messages, and there was no RoboCall message.  Plaintiff then checked with his wife, who verified that she received no RoboCall on either her cell phone or the family phone

33.  Plaintiff's wife had received Plaintiff's initial RoboCall broadcasts.

34.  Plaintiff thereupon promptly telephoned Defendant Wright and asked why the RoboCalls had not been made.

35.  Defendant Wright offered an excuse and promised to broadcast the (Sunday) calls on the next day, Monday.

36.  On Monday, Plaintiff again returned from campaigning and learned that, once again, the RoboCalls had not been broadcast by Defendants.

37.  Plaintiff again called Defendant Wright regarding this astonishing non-performance.

38.  Ultimately, the RoboCall message scheduled to be broadcast on Sunday, November 3, 2007, was not broadcast until late morning or early afternoon of Election Day itself, November 6, 2007.

39.  On Election Day, Defendant Mack Wright and Plaintiff spoke on the telephone at approximately 10:50 am, at which time Defendant Wright informed Plaintiff

5

that the RoboCalls were now being "launched" and that the voters would receive the calls

shortly.

40.    At 12:10 p.m., at his office telephone, Plaintiff received the RoboCall which

had been scheduled for two days prior.

41.    Upon information and belief, by noon on Election Day, a substantial number

of voters, if not a majority of voters, had already cast their votes.

42.    Therefore, as a result of Defendants failure to broadcast the "Diederich for

Legislature" campaign message RoboCalls on November 4th and 5th, 2007, the majority

of District 1 voters did not hear Plaintiff's substantive message—the reason to vote for

him—prior to casting their ballot.

43.    Plaintiff lost the election by approximately 9 votes, out of approximately

5,000 votes cast.

44.    There can be no doubt that Plaintiff would have won the election if

Defendants had broadcast the RoboCalls on the two days preceding Election Day.

45.    Defendants breached their contract with Plaintiff by not broadcasting

Plaintiff's RoboCalls on November 4 and 5, 2007, thereby proximately causing Plaintiff

to lose the election.

46.    Defendants must be estopped from making any claim to the contrary:

Defendants "guaranteed" election results and that their RoboCalls could elect

"unelectable" candidates.   Plaintiff lost by the slimmest of margins, which margin

certainly would have been overcome had Defendants broadcast Plaintiff's message to the

voters, as Plaintiff had paid Defendants to do.

47.  Upon information and belief, the initial RoboCalls which were broadcast by Defendants were of great concern to Plaintiff's political opposition, because the initial RoboCalls were effective for and advancing Plaintiff's candidacy.

48.  Upon information and belief, Plaintiff's political opposition may have contacted Defendant Wright and convinced him, by payment or promise of future business, to fail to broadcast Plaintiff's political message.

49.  Upon information and belief, Defendants may have participated in a "political dirty trick," by intentionally failing to broadcast Plaintiff's RoboCalls.

***Subsequent extortion by Defendant Wright***

50.  Because of Defendants' breach of contract, Plaintiff informed Defendants that he wished a refund of the money which his political campaign had paid to Defendants.

51.  In particular, Defendants had substantially failed to perform on their agreement to provide RoboCall broadcast prior to Election Day 2007.  This deprived Plaintiff of the entire measure of what Plaintiff had contracted for, namely, the broadcast of a timely political message.

52.  However, after Plaintiff requested a refund of what his political campaign had paid, Defendant Wright insisted that Defendants were entitled to the full amount originally agreed, notwithstanding Defendants' subsequent non-performance.

53.  Defendant Wright asserted Defendants' claim to an entitlement to full payment notwithstanding their postcard advertisement "If we do not achieve, your calls are free."

54.  Contrary to his prior admission of non-publication, Defendant Wright claimed after Election Day that he had made the RoboCall broadcasts on November 4 and 5, 2007.

55.  Moreover, Defendant Wright claimed he had proof of such calls.

56.  Yet Defendant Wright never produced such "proof" for Plaintiff.

57.  Plaintiff thereafter lodged a credit card payment dispute regarding his payment to Defendants.

58.  Plaintiff's credit card company thereafter decided that Plaintiff should pay one-half of the disputed amount, because the introductory RoboCall of Plaintiff and the RoboCall of Plaintiff's wife were broadcast.

59.  Plaintiff received a credit on his credit card account for one-half the amount he had been charged.

60.  Plaintiff was then contacted by Defendant Wright, who informed Plaintiff that Defendant Wright would use RoboCalls to make "deadbeat" calls to Plaintiff's voter list, and that he would continue making such calls to residents of Plaintiff's community until such time as Plaintiff paid Defendant Wright what Defendant Wright demanded, in full.

61.  Plaintiff was shocked.  Essentially, Defendant Wright was threatening to inform Plaintiff's friends, neighbors, clients, potential future clients and potential future voters that Plaintiff was a "deadbeat" and a person who does not pay his financial obligations.

62.  Moreover, the very idea that RoboCalls would be made to Plaintiff's District 1 voter list, thereby inconveniencing and annoying local residents with telephonic RoboCalls attributable to Plaintiff was horrifying to Plaintiff.

63.  Referred to the telephone RoboCall of Plaintiff's wife as a "spouse call," Defendant Wright also wrote to Plaintiff as follows, threatening Plaintiff's wife:

> "You did several spouse calls.  I would call your spouse now if I were you and ask her advice on this for she is going to share some of the embarrassment.

64.  Plaintiff considered Defendant Wright's threats to be attempted extortion.  As further described below, Plaintiff yielded to the threats and paid Defendant Wright what was demanded.

65.  Specifically, Defendant Wright informed Plaintiff that Defendant Wright had issued "deadbeat" RoboCalls collection method on previous occasions, with success, against "deadbeat" political candidates who refused to pay Defendant Wright what he claimed was due him.

66.  Defendant Wright gave as an example his supposed threats, and actual deadbeat RoboCalls, to Idaho Congressman Bill Sali.  (Plaintiff does not know whether Defendant actually threatened Congressman Sali.)

67.  Specifically, as Defendant Wright wrote Plaintiff in an email dated November 18, 2007:

> "It took just one 'deadbeat' call to 500 people on his dialing list and I was paid the entire amount in less than ten minutes of the broadcast going out."

68.  Plaintiff thereafter succumbed to Defendants extortion, by writing a check dated 19 December 2007 to Defendant Wright in the full amount sought by him.

***Damages***

69.  As a result of Defendants actions, Plaintiff narrowly lost the election, and with it lost the ability to serve the voters of District 1—an immeasurable injury to the public,

especially as Defendants actions deprived Plaintiff of the ability to get out his public service message.

70.   Besides the injury to the public, and to Plaintiff' civic interests and desire to serve the public, Plaintiff suffered actual financial injury by being denied election to the public office he sought, and the attendant compensation and benefits paid to a Rockland County Legislator.

71.   The elected office is a four year term.

72.   Upon information and belief, the compensation paid to a Rockland County Legislator is at or over $32,000, plus substantial perks and benefits, including retirement benefits.

73.   Upon information and belief, in salary alone, Plaintiff was damaged in an amount in excess of $128,000, and when benefits are included, a far greater amount.

74.   Plaintiff was also injured in the amount the time he devoted to campaigning for public office, which time otherwise could have been spent on his law practice, on his Army Reserve duties (Plaintiff is an Iraq veteran[1] and remains active in the reserves), and with his family.

75.   Plaintiff suffered non-economic injury in an amount in amount to be determined at trial, including injury relating to Defendants outrageously extortionate conduct.

76.   Plaintiff has been damaged thereby.

---

[1] Plaintiff is a Lieutenant Colonel in the U.S. Army JAG Corps (reserves), and spent one year in central Iraq in 2004-2005.

*New York Long Arm Jurisdiction*

77.   Virtually all of Defendants' contacts and activities herein have involved activity within the State of New York, including adverting here, contacting Plaintiff here, telephoning Plaintiff here, negotiating a contract here, recommending a New York firm to assist with a voters list, broadcasting RoboCalls here, failing to broadcast RoboCalls here, and threatening to disparage and defame Plaintiff here, defaming Plaintiff here, all of which make venue in New York State proper whether under New York State's "long arm jurisdiction" or pursuant to federal statute.

## FIRST CAUSE OF ACTION -
## BREACH OF CONTRACT

78.   Plaintiffs repeat and reallege each of the above paragraphs as a fully set forth here again at length.

79.   Plaintiff entered into a contract with Defendant for Defendant to provide RoboCall broadcasts prior to Election Day, 2007.

80.   Defendants breached Plaintiff's contract, by failing to make RoboCalls which Defendants had agreed to make.

81.   Defendants further breached their "guarantees" regarding the provision of the RoboCall advertising services.

82.   Defendants further breached their contract, and the implied duty of good faith and fair dealing, by resorting to attempted extortion, actual extortion and coercion as a means of obtaining payment for services not performed.

83.   Defendants' breach of their contractual promises caused Plaintiff damage thereby.

84. Due to the outrageousness of the conduct, Plaintiff is also entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION - NEGLIGENCE

85. Plaintiffs repeat and reallege each of the above paragraphs as a fully set forth here again at length.

86. Defendants breached their duty of due care owed to Plaintiff, proximately causing Plaintiff damage thereby.

87. Moreover, Defendants' conduct was wanton and reckless and involved, at a minimum, gross negligence if not intentional wrongdoing, thereby warranting punitive damages.

## THIRD CAUSE OF ACTION - ATTEMPTED AND ACTUAL EXTORTION, AND CONVERSION

88. Plaintiffs repeat and reallege each of the above paragraphs as a fully set forth here again at length.

89. Defendants, and in particular Defendant Wright, engaged in extortionate conduct toward Plaintiff, to compel the payment of money from Plaintiff, and to take money from Plaintiff, by unlawful means.

90. Defendant converted Plaintiff's property, and engaged in conduct which was designed to coerce and extort money from Plaintiff.

91. Defendants, and in particular Defendant Wright, engaged in extortionate conduct and threats toward Plaintiff designed to engender fear, anxiety and emotional distress, for the purposes of wrongfully compelling a payment of money from Plaintiff.

12

92.    Defendants conduct had no legitimate basis, and was solely designed to harm Plaintiff, and as such constituted a *prima facie* tort.

93.    Plaintiff damage thereby.

94.    Plaintiff requests an award of punitive damages for Defendants' outrageous conduct.

## FOURTH CAUSE OF ACTION - DEFAMATION

95.    Plaintiffs repeat and reallege each of the above paragraphs as a fully set forth here again at length.

96.    Defendant Wright stated, falsely, to R. Madden and perhaps others, that Plaintiff was attempting to avoid payment for services provided by Defendants, that Plaintiff was a "deadbeat," and that Plaintiff was trying to "essentially, steal" from Defendant.

97.    Defendant Wright's statements were intentionally made, and knowingly false, and, upon information and belief,  published to Detective both in writing (email) and orally.

98.    Defendant Wrights statements disparaged Plaintiff and placed him in a false light.

99.    Plaintiff was injured and damaged thereby.

100.   Plaintiff requests an award of punitive damages for Defendants' outrageous conduct.

13

## FIFTH CAUSE OF ACTION -
## FALSE ADVERTISING

101. Plaintiffs repeat and reallege each of the above paragraphs as a fully set forth here again at length.

102. Defendant's actions involved materially false advertising, conducted in interstate commerce, and, upon information and belief, mail fraud and wire fraud.

103. Defendants' actions damaged Plaintiff thereby.

## FIFTH CAUSE OF ACTION -
## FRAUD

104. Plaintiffs repeat and reallege each of the above paragraphs as a fully set forth here again at length.

105. Defendant Wright told Plaintiff on November 4, 2007 and again on November 5, 2007 that he would broadcast Plaintiff's scheduled pre-recorded political messages which had not been broadcast.

106. Defendant Wright's statements to Plaintiff were false and fraudulent.

107. Upon information and belief, Defendant Wright had no intention on timely broadcasting Plaintiff's messages. Plaintiff suspects that Plaintiff's political opposition induced Defendant Wright not to broadcast the RoboCalls.

108. Thereafter, Defendant Wright continued his fraudulent conduct by asserting to Plaintiff and others that the scheduled RoboCalls had been broadcast, knowing that his representations were false, as Defendants did not broadcast Plaintiff's RoboCalls.

109. This fraudulent conduct prevented Plaintiff from attempting to locate a replacement RoboCall service provider before Election Day.

14

# GUARANTEED

## Results Voice Broadcast!

### If we do not achieve, your calls are free.

*Our delivery rates average 85% or higher!*

No other voice broadcast company makes this offer. Our ten years of experience in electing unelectable candidates gives us the confidence to make this offer.

"2007 Florida House Special Election winner, Kurt Kelly, says, "I definitely would not have won my election without you."

Susan Starkey, after being down by 10% with less than one week to go, used our service and won her election by four votes!

Voice Broadcast is not an option, it is a must!

## CALLS AS LOW AS 3.5 CENTS

### WIN YOUR RACE, LLC.

*The above testimonials are but a few of the hundreds we have received. Use the passwords "raptor" and "dragon" to view more on the References page.*

www.win-your-race.com

**Call today: (877)272-0713 and (407)774-2036**

**WIN YOUR RACE, LLC.**
557 Woodview Drive
Longwood, Florida 32779

Mike Diederich
361 Route 210
Stony Point NY 10980-3230

Prst. Std
U.S. Postage
**Paid**
Permit # 1979
Orlando, FL

Exhibit "1"



# GUARANTEED
## Results Voice Broadcast!

**If we do not achieve, your calls are free.**

Many companies talk a good game but do not deliver. Delivery percentage is king and queen in voice broadcast. If you have someone selling you calls for three cents and their delivery rate is 25%, (as often happens) your real cost is twelve cents per call. The real cost is not measured in terms of dollars; it is the lost votes that can cost you the election.

✓ **Our Guaranteed Results Calls can be as low as 3.5 ¢**

✓ **30,000,000 calls per day capacity - 100% fiber optic**

✓ **Ten years experience electing unelectable candidates**

**WIN YOUR RACE, LLC.**
www.win-your-race.com
Call today: (877)1272-0713
And (407)774-2036